**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSEPH ARUANNO, | : | |
| Plaintiff, | : | Civil Action No. 09-3368 (SRC) |
| v. | : | **O P I N I O N** |
| MR. STEVE JOHNSON, et al., | : | |
| Defendants. | : | |

**APPEARANCES:**

Joseph Aruanno, Pro Se
#363
Special Treatment Unit Annex
P.O. Box 905
Avenel, NJ 07001

**CHESLER, District Judge**

Plaintiff, Joseph Aruanno, currently confined at the Special Treatment Unit, Avenel, New Jersey, seeks to bring this action alleging violations of his constitutional rights in forma pauperis, without prepayment of fees pursuant to 28 U.S.C. § 1915. On January 21, 2010, this Court granted Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and ordered the Clerk of the Court to file the complaint, and issue summonses.

At this time, the Court must review the complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it should be

dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the following reasons, Plaintiff's complaint will be dismissed, without prejudice.

### BACKGROUND

Plaintiff, an involuntarily civilly committed person, submits this complaint against 12 defendants, seeking monetary and other relief pursuant to 42 U.S.C. § 1983. Plaintiff states that "there has been a pattern of retaliation and abuse [against him] for making complaints, verbally and in writing, against certain staff members of the D[epartment] o[f] C[orrections]." He contends that on June 24, 2009, residents were ordered to lock-in their rooms. Shortly thereafter they were forced from the housing units and room searches were conducted outside of their presence. When Plaintiff returned to his room, there were "many damaged items including a brand new TV and a family photo ripped in half." During the search, defendant Lt. Rock made an announcement that, "If the screwdriver is returned THIS will stop." Lt. Rock also said "This will continue everyday until the screwdriver is returned." After Plaintiff was sent back to his room, he asked defendant Sgt. Vasquez to contact "SID" or take a picture of the damage in his room, and Vasquez refused.

Plaintiff asserts that the search of his room "was targeted" by certain defendants who have since moved to other facilities because of improper conduct.  Plaintiff asserts that he had filed complaints against these defendants.

On June 25, 2009, numerous rooms were "tossed" again, and Plaintiff's room, in particular was searched on June 27, 2009. On June 29, 2009, all residents were removed from their rooms and dogs were used to search the rooms.  Detainees were also "forced to be subjected to some sort of screening machine that we had to sit on and perform numerous maneuvers."  On June 30, 2009, a list was given to Sgt. Allen to search certain rooms, Plaintiff's being one.

Plaintiff makes numerous conclusory statements that legal materials were taken from him, internal policies were not followed, that he did not receive any disciplinary actions, and that he is being "forced to live in fear."

## DISCUSSION

**A.   Standards for *Sua Sponte* Dismissal**

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte

3

dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B), because Plaintiff is proceeding as an indigent.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

Recently, the Supreme Court refined this standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to

4

relief." <u>Fed. R. Civ. P.</u> 8(a)(2).  Citing its recent opinion in
<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the
proposition that "[a] pleading that offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do,'" <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting
<u>Twombly</u>, 550 U.S. at 555), the Supreme Court held that, to
prevent a summary dismissal, a civil complaint must now allege
"sufficient factual matter" to show that the claim is facially
plausible.  This then "allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." <u>See</u> <u>id.</u> at 1948.  The Supreme Court's ruling in <u>Iqbal</u>
emphasizes that a plaintiff must demonstrate that the allegations
of his complaint are plausible.  <u>See</u> <u>id.</u> at 1949-50; <u>see</u> <u>also</u>
<u>Twombly</u>, 505 U.S. at 555, & n.3; <u>Fowler v. UPMC Shadyside</u>, 578
F.3d 203, 2009 WL 2501662, *4 (3d Cir., Aug. 18, 2009).

**B.   <u>Section 1983 Actions</u>**

A plaintiff may have a cause of action under 42 U.S.C. §
1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## C.  **Retaliation Claim**

Plaintiff alleges that he was retaliated against because he filed numerous complaints against the officers involved in the search of his room.

"Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."  Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  In order to state a prima facie case of retaliation, a prisoner must assert facts demonstrating that: (1) the conduct in which he was engaged was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the prison officials' decision to impose such adverse action.  See Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) (quoting Rauser v. Horn, 241

6

F.3d 330, 333 (3d Cir. 2001)).  Moreover, to show an "adverse
action," the inmate must assert facts demonstrating that
defendants' actions were of such nature that they were
"sufficient to deter a person of ordinary firmness from
exercising his [constitutional] rights."  Allah, 229 F.3d at 225.

     In this case, Plaintiff has not alleged facts sufficient to
demonstrate the third part of the retaliation requirements: that
his constitutionally protected conduct (filing complaints against
defendants) was a substantial or motivating factor in the prison
officials' decision to impose adverse action (the searches).
Plaintiff makes clear in his complaint that the rooms were being
searched in light of a missing screwdriver.  Whether or not
Plaintiff believes the search was excessive or not, Plaintiff's
own admissions demonstrate that the officials' actions were based
on that premise.  Furthermore, Plaintiff notes in his complaint
that his room was not the only room being searched for the
screwdriver.  He states: "Then on June-30-09 a list was given to
a Sgt. Allen to search only certain rooms which included mine."
(Complt., p. 3).  In fact, Plaintiff states that on June 24,
2009, all rooms were searched.  On June 25, 2009, numerous cells
were "tossed," on June 27, 2009, Plaintiff states that only his
room was searched, but then on June 29, 2009, all resident rooms
were searched using K-9 dogs.  Also on that day all detainees
were "subjected to some sort of screening machine that we had to

sit on and perform numerous maneuvers."  (Complt., pp. 2-3).
Thus, it does not appear that Plaintiff was specifically
targeted.

Therefore, Plaintiff has not alleged sufficient facts to
show that he was retaliated against when the defendants searched
his room, as well as other rooms, numerous times in one week, in
search of contraband.  This claim must be dismissed.

**D.   Property Claims**

Plaintiff states within his complaint that during the June
24, 2009 search of his room, "many" items got damaged; however,
Plaintiff only notes damage to "a brand new TV and a family photo
ripped in half."  Plaintiff asked for a photo to be taken of the
damage in his room, but it was not done.  (Complt., p. 2).

The Due Process Clause prohibits a state or local government
entity from depriving a person of property without due process of
law.  See Greenholtz v. Inmates of Nebraska Penal and Corr.
Complex, 442 U.S. 1, 7 (1979).  To analyze a due process claim, a
Court conducts a familiar two-part inquiry: a Court determines
whether the plaintiff "was deprived of a protected interest, and,
if so, what process was his due."  Logan v. Zimmerman Brush Co.,
455 U.S. 422, 428 (1982); see also Holman v. Hilton, 712 F.2d
854, 858 (3d Cir. 1983).

Property loss caused by the intentional acts of government
officials does not give rise to a procedural due process claim

8

under § 1983 where a post-deprivation remedy satisfying minimum procedural due process requirements is available under state law. See <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981) (<u>overruled in part on other grounds by</u> <u>Daniels v. Williams</u>, 474 U.S. 327 (1986)); <u>see also</u> <u>Zinermon v. Burch</u>, 494 U.S. 113, 115 (1990); <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984); <u>Holman</u>, 712 F.2d at 856. The New Jersey Tort Claims Act ("NJTCA") provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of the State or local government.[1]

Here, the complaint alleges that Plaintiff's property was damaged during searches by state actors. This Court construes this claim as alleging a violation of Plaintiff's due process rights. However, given the post-deprivation remedy available to him, Plaintiff's recourse after he was deprived of his property would be a common-law tort action against the appropriate defendants under the NJTCA, not a cause of action pursuant to §

---

[1]  In <u>Logan</u>, however, the Supreme Court explained that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action. <u>See</u> 455 U.S. at 435-36; <u>but</u> <u>see</u> <u>Tillman v. Lebanon Co. Correctional Facility</u>, 221 F.3d 410, 421 n.12 (3d. Cir. 2000) (citing <u>United States v. James Daniel Good Real Property</u>, 510 U.S. 43, 53 (1993)) (in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate). There is nothing in the complaint to suggest that loss of Plaintiff's property was accomplished pursuant to established state procedure; nor has this Court located any such established procedure.

1983.  Plaintiff does not indicate that he attempted to file a claim pursuant to the NJTCA.

Accordingly, the Court finds that the NJTCA was available to Plaintiff as a matter of law as a remedy for his alleged property loss at the hands of the defendants.[2]  See Holman, 712 F.2d at 857; Asquith v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J. 1998), aff'd 186 F.3d 407 (3d Cir. 1999).  Because the NJTCA provided all the process that was due for Plaintiff's alleged property loss, this claim must be dismissed.

**E.    Harassment Claim**

Liberally construing the complaint, Plaintiff asserts that the searches were conducted in a manner meant to harass him.  He states: ". . . I also need to point out that after the first thorough search of many in one week the latter could only be considered harassment, confusion, etc., which once again proves the need for the court to act immediately in these matters." (Complt., p. 4.).

In Hudson v. Palmer, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search conducted to harass him was

_____

[2]    It appears that Plaintiff's due process claim fails as a matter of law even if he is presently barred from pursuing his claims.  Under the NJTCA, Plaintiff would have had to have filed a tort claim notice within 90 days of accrual of the claim, as required by N.J. STAT. ANN. §§ 59:8-1 to 59:8-11.  See Logan, 455 U.S. at 437; Holman, 712 F.2d at 857 & n. 3.

unreasonable because a prisoner has a reasonable expectation of
privacy not to have his cell, locker, personal effects, person
invaded for such a purpose.  See id. at 529.  The Supreme Court
rejected the claim because "prisoners have no legitimate
expectation of privacy." Id. at 530.  The Court observed that:

> A right of privacy in traditional Fourth Amendment
> terms is fundamentally incompatible with the close and
> continual surveillance of inmates and their cells
> required to ensure institutional security and internal
> order.... [S]ociety would insist that the prisoner's
> expectation of privacy always yield to what must be
> considered the paramount interest in institutional
> security.... [I]t is accepted by our society that loss
> of freedom of choice and privacy are inherent incidents
> of confinement.

Id. at 527-28 (footnotes, citations and internal quotation marks
omitted).  The same conclusion was reached with respect to
pretrial detainees other than convicted prisoners.  See Bell v.
Wolfish, 441 U.S. 520, 558-560 (1979) (finding that a body cavity
searches of pretrial detainees do not violate the Fourth
Amendment).

Consequently, involuntarily committed patients, and sexually
violent predators, like pretrial detainees, are entitled to some
protection under the Fourth Amendment, but they do not have an
expectation of privacy equal to an individual in society
generally.  See Serna v. Goodno, 567 F.3d 944, 948 (8th Cir.2009)
(noting that pretrial detainees are kept in custody because there
is cause to believe they are dangerous; similarly, commitment
under Minnesota law as a sexually dangerous person requires a

11

finding of dangerousness), cert. denied, 130 S. Ct. 465 (2009);
Allison v. Snyder, 332 F.3d 1076-79 (7th Cir. 2003) (sexually
violent predators may be subjected to conditions that advance
goals such as preventing escape and assuring the safety of
others, even though they may not technically be "punished"),
cert. denied, 540 U.S. 985 (2003); Aiken v. Nixon, 236 F. Supp.2d
211, 233 (N.D.N.Y. 2002), aff'd 80 Fed. Appx. 146 (2d Cir. 2003);
see also, Jennings v. New York State Office of Mental Health, 786
F. Supp. 376, 382, 384 (S.D.N.Y. 1992), aff'd, 977 F.2d 731 (2d
Cir. 1992).

     Based on the cases cited herein, in this case, Plaintiff's
claim that he was harassed by having his room searched cannot be
sustained.  Plaintiff's status as a civilly committed person
subjects him to conditions of confinement necessary to ensure the
safety of others.  Indeed, the defendants' search for contraband
was in the interest of institutional safety.  Therefore,
Plaintiff's claim must be dismissed.

**CONCLUSION**

     Despite the above-explained shortcomings in Plaintiff's
complaint, this Court will allow Plaintiff to file a motion to
amend his complaint, attaching to any such motion a proposed
amended complaint, which addresses the deficiencies as outlined
above.  Specifically, Plaintiff must adhere to the guidance by
the Court of Appeals for the Third Circuit, which has explained,

12

"the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage[ ]' but . . . 'calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 230-34 (internal citations omitted).

An appropriate order accompanies this opinion.

STANLEY R. CHESLER
United States District Judge

Dated: 11/29/10